UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                                             :
COLONIAL FUNDING NETWORK, INC.,                              :
                                         Plaintiff,          :
                                                             :
                    -against-                                :
                                                             :
MCNIDER MARINE, LLC, et al.,                                 :
                                         Defendants.         :
                                                             :
-------------------------------------------------------------X
                                                             :
MCNIDER MARINE, LLC, et al.,                                 :
                                                             :       17 Civ. 2644 (LGS)
                                Counterclaim Plaintiffs,     :
                                                             :       **OPINION AND ORDER**
                    -against-                                :
                                                             :
COMPLETE BUSINESS SOLUTIONS, INC., et                        :
al.,                                                         :
                              Counterclaim Defendants.       :
                                                             :
-------------------------------------------------------------X

┌──────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____        │
│ DATE FILED: 11/21/2017               │
└──────────────────────────────────────┘

LORNA G. SCHOFIELD, District Judge:

Plaintiff Colonial Funding Network, Inc. ("Colonial Funding") sued Defendants McNider

Marine, LLC and Bruce McNider (the "McNider Parties") for overdue payments on a financing

transaction. The McNider Parties settled with Plaintiff, but joined fourteen counterclaim

defendants, each a financial institution with whom the McNider Parties had entered into similar

transactions. The McNider Parties have resolved their claims against all but six of the

counterclaim defendants.

Movants are five of the remaining counterclaim defendants -- Complete Business

Solutions Group, Inc. ("CBSG"), Retail Capital, LLC ("Retail Capital"), Richmond Capital

Solutions, LLC ("Richmond"), Yellowstone Capital, LLC ("Yellowstone") and IBIS Capital Group, LLC ("IBIS") (these five collectively, the "Counterclaim Defendants"). They move to dismiss the "Third Amended Complaint" -- which is actually the McNider Parties' third amended answer and counterclaims (the "Counterclaims"). Their motions are granted. The Counterclaims against Counterclaim Defendants are severed from the main action, which is closed, and are dismissed without prejudice.[1] For the same reasons, the Counterclaims against the sixth counterclaim defendant, Flat Fee Merchant Services, LLC ("Flat Fee"), which has not appeared in this action, are also severed and dismissed.

The McNider Parties move to amend the caption to name themselves as "Plaintiffs" and the remaining counterclaim defendants as "Defendants." The McNider Parties' motion is denied as moot.

## I.  BACKGROUND

The following alleged facts are taken from the Counterclaims and are accepted as true for purposes of this motion. The facts are construed, and all reasonable inferences are drawn, in favor of Plaintiff as the non-moving party. *See Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017).

### A.  Factual History

McNider Marine, LLC is an Alabama-based marina that sells and repairs boats. McNider and his wife, Melissa McNider, own McNider Marine, LLC.

---

[1] Because the remaining Counterclaim Defendants and corresponding Counterclaims are severed from the main action based on improper joinder, this Opinion does not address the merits of Counterclaim Defendants' other arguments for dismissal of the counterclaims asserted against them.

The Counterclaims allege that the McNider Parties "entered into a continuous series of criminally usurious loans with the [Counterclaim] Defendants and other[s] . . . beginning with Retail Capital on May 22, 2014." The Counterclaims further allege that, "as a direct and proximate result of the financial strain resulting from this initial loan with Retail Capital," the McNider Parties entered into a series of similar agreements to sell a percentage of future receivables -- "factoring agreements" -- with Counterclaim Defendants and others. In total, the McNider Parties entered into no fewer than twenty-one such agreements with at least twelve different lenders over a more than two-year period. Relevant here, the agreements include three agreements with Retail Capital on May 22, 2014, September 23, 2014, and December 3, 2014; one agreement with Ibis on October 6, 2016; two agreements with Yellowstone on July 21, 2016, and October 19, 2016; and one agreement with Richmond/CBSG on November 17, 2016.

The Counterclaims do not describe the circumstances that precipitated each agreement or that surrounded any alleged event of default. However, they allege that the McNider Parties were the victims of an unlawful "pyramid scheme," stating that Counterclaim Defendants "lured" them into these transactions by "sharing customer information" and "actively seeking other [lenders] to place new loans."[2] The Counterclaims allege broadly that each counterclaim defendant falsely "held [itself] out as providing expert financial consulting services," representing that "McNider's business would be able to afford and comply with the terms and conditions of each transaction," when in fact it could not. The Counterclaims further allege that Counterclaim Defendants made "false promises" that would "help McNider's business grow, as represented and promised" when, to the contrary, they knew that "the merchant is pushed toward

---

[2] The Counterclaims' allegations of a scheme to lure the McNider Parties into fraudulent transactions are asserted against both Counterclaim Defendants and Flat Fee.

an unsustainable level of indebtedness." The alleged scheme was furthered with the purported factoring agreements that falsely represented the fair market value of receivables and other terms. The result was alleged "sham" sales of receivables that in fact were usurious loans, causing the McNider Parties to suffer "indivisible injuries," including loss of goodwill and profits, devaluation of McNider Marine, LLC, deterioration of the McNider Parties' credit profiles and, as to McNider, mental anguish and distress.

In addition to negligence and/or negligent misrepresentation, the Counterclaims allege violations of Alabama law against Counterclaim Defendants; breach of contract against Retail Capital and Yellowstone; and violations of New York law against Yellowstone.

### B.  Procedural History

Colonial Funding initiated this action against the McNider Parties on or around March 20, 2017, in the Supreme Court of the State of New York. The Complaint alleged various breach of contract claims arising out of an agreement whereby Plaintiff allegedly purchased $351,000.00 of McNider Marine's future receivables for $260,000.00. The McNider Parties filed a Notice of Removal on April 12, 2017.

On April 17, 2017, the McNider Parties filed the Answer and Counterclaims, asserting claims against fourteen counterclaim defendants, including the six remaining counterclaim defendants. The McNider Parties filed the Amended Answer and Counterclaims on April 26, 2017, the Second Amended Answer and Counterclaims on May 22, 2017, and the operative pleading at issue here, styled as the "Third Amended Complaint," on June 27, 2017. On the same day that the McNider Parties filed the purported "Third Amended Complaint" -- *i.e.*, their third amended answer and counterclaims -- the parties filed a Stipulation of Discontinuance, resolving the underlying dispute between Plaintiff and the McNider Parties. The McNider

Parties also moved to amend the caption to name the McNider Parties as "Plaintiffs" and Counterclaim Defendants and Flat Fee as "Defendants," which is *sub judice*.

Between July 13, and July 31, 2017, Counterclaim Defendants filed motions to dismiss the Counterclaims on various grounds, including that joinder is improper under Federal Rule of Civil Procedure 20.[3]

## II.     LEGAL STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Trs. of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 566, but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Rule 13 governs counterclaims and crossclaims against parties already in an action. Rule 20 governs permissive joinder of new parties. Rule 20 is relevant here because the Counterclaim Defendants and Flat Fee were not parties to the complaint first filed by Plaintiff against the McNider Parties as Defendants. Rule 20(a) states that persons may be joined in one action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

---

[3] All references in this Opinion to Rules refer to the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 20(a)(2). "The purpose of Rule 20 is to promote trial convenience and to expedite the final determination of disputes." *Beg v. Elias Props. Valley Stream 500 Sunrise, LLC*, No. 16 Civ. 3807, 2017 WL 1906728, at *2 (E.D.N.Y. May 5, 2017) (internal quotation marks omitted). The plaintiff bears the "burden of demonstrating that [its] claims arise out of the same transaction or occurrence for purposes of Rule 20." *Kehr ex rel Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 827 (S.D.N.Y. 2008).

To determine whether Rule 20's "transaction or occurrence" requirement is met, courts in this circuit apply the "logical relationship" test that the Second Circuit applies in the context of Rule 13 to assess whether a counterclaim arises out of the same transaction or occurrence as the original claim. *See, e.g.*, *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 228 (E.D.N.Y. 2013); *Peterson v. Regina*, 935 F. Supp. 2d 628, 637 (S.D.N.Y. 2013). Under that test, the "transaction or occurrence" requirement is met where "the essential facts of the claims [are] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004) (internal quotation marks omitted); *accord Trainum v. Rockwell Collins, Inc.*, No. 16 Civ. 7005, 2017 WL 1093986, at *2 (S.D.N.Y. Mar. 9, 2017). Where a defendant has been improperly joined under Rule 20(a), a court has broad discretion under Rule 21 to sever that defendant from the action. *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159–60 (S.D.N.Y. 2009) (relying on *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988) ("The decision whether to grant a severance motion is committed to the sound discretion of the trial court."); Fed. R. Civ. P. 21. Even if joinder is technically proper, courts may exercise their discretion to sever. *Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 559 (S.D.N.Y. 2013) (relying on *Erausquin v. Notz, Stucki Mgmt. (Berm.) Ltd.*, 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011)).

## III.    DISCUSSION

The Counterclaims are dismissed because joinder is improper under Rule 20.  Even if the Rule's requirements for permissive joinder were met, the Court exercises its discretion under Rule 21 to sever the Counterclaim Defendants and the Counterclaims against them from the underlying lawsuit between Plaintiff and the McNider Parties.

### A.  Mandatory Severance

The Counterclaims allege that the McNider Parties entered into at least twenty-one separate agreements with twelve lenders, including five of the six remaining counterclaim defendants, over a period of more than two years.[4]  Courts in the Second Circuit routinely sever claims arising out of separate loan transactions with different lenders (or even the same lender) because they do not constitute the same transaction or occurrence under Rule 20.  *See, e.g.*, *Abraham*, 947 F. Supp. 2d at 229 (holding that the claims of multiple plaintiffs against different lender-defendants based on separate loan transactions could not be joined in a single action); *Kalie*, 297 F.R.D. at 557–58 (severing the claims of multiple plaintiffs who entered into fifteen different loan transactions with different lenders because they did not arise out of the same transaction, occurrence or series of transactions despite the plaintiffs' allegations of a "single predatory lending scheme").

---

[4] There is no apparent relationship among any of these transactions and the underlying breach of contract action between Plaintiff and the McNider Parties, which previously settled, and the McNider Parties do not claim that any such relationship exists.  Nor have the McNider Parties asserted any claim against Plaintiff -- an "opposing party" -- and Counterclaim Defendants, as required for joinder under Rule 13(h).  *See Sony Fin. Servs., LLC v. Multi Video Grp.*, No. 03 Civ. 1730, 2003 WL 22928602, at *4 (S.D.N.Y. Dec. 12, 2003) ("While Rule 13(h) allows additional parties to be joined in accordance with Fed. R Civ. P. 19 and 20, that subsection permits such additional parties to be joined only where an opposing party is also a party to the counterclaim."); *Republic Nat'l Bank v. Hales*, 75 F. Supp. 2d 300, 310 n.8 (S.D.N.Y. 1999), *aff'd*, 4 F. App'x 15 (2d Cir. 2001) (summary order).

The McNider Parties argue that joinder is proper under Rule 20 because the claims arise "out of a series of very similar and interconnected transactions" and because they allege joint-and-several liability.  This argument fails.  The Counterclaims fail to plead sufficient facts to suggest that the Counterclaims arose out of a series of logically related transactions, or that Counterclaim Defendants engaged in concerted action giving rise to joint and several liability. The allegation that "the defendants merely committed the same type of violation in the same way" is insufficient to justify joinder under Rule 20.  *See U.S. ex rel. Doe v. Taconic Hills Cent. School Dist.*, 8 F. Supp. 3d 339, 344 (S.D.N.Y. 2014) (concluding that joinder was improper where there were no allegations suggesting that the defendants could be held jointly or severally liable or that the relators' claims based on each defendants' submission of its own Medicaid bills constituted the same transaction, occurrence or series of occurrences).  Nor is the allegation that the McNider Parties were injured by all of the Counterclaim Defendants "sufficient [by itself] to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)."  *Deskovic*, 673 F. Supp. 2d at 167 (alteration in original) (quoting *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003) (holding that allegations that the defendants infringed the plaintiff's patent in the same way, without allegations connecting their conduct, failed to satisfy the "transaction or occurrence" test).

To the extent that the Counterclaims allege that they arise out of a series of transactions because Counterclaim Defendants "collectively engaged in an unlawful pyramid scheme," such conclusory allegations of conspiracy or joint action are insufficient to permit joinder under either the general pleading standard of Rule 8, or the heightened pleading standard for allegations of

fraud or mistake under Rule 9(b).  First, with the exception of CBSG and Richmond,[5] the

Counterclaims do not allege any facts suggesting that any Counterclaim Defendant had any

relationship -- let alone conspired -- with any other Counterclaim Defendant.  "While allegations

of joint action . . . might, in some cases, be sufficient to permit joinder under Rule 20,

unsupported and speculative allegations that the various Defendants conspired to defraud . . .

Plaintiff does not satisfy the requirement that Plaintiff['s] claims arise out of the same

transaction, occurrence, or series of occurrences, nor does it obviate the need for separate proof

as to each individual claim."  *Abraham*, 947 F. Supp. 2d at 230 (internal quotation marks and

alterations omitted).

Second, the Counterclaims fail to allege "with particularity the circumstances constituting

fraud," as required by Rule 9(b).  Under Rule 9(b), "[i]n alleging fraud or mistake, a party must

state with particularity the circumstances constituting fraud or mistake."  The Rule's application

is not limited to pleading causes of action; by its terms, it applies to all *allegations* of fraud or

mistake, including, as here, allegations of fraud in support of joinder under Rule 20(a).  *See id.* at

230–31 (joinder based "solely" on conspiracy allegations was improper where the plaintiffs

failed to meet Rule 9(b)'s heightened pleading standard); *see also Rombach v. Chang*, 355 F.3d

164, 171 (2d Cir. 2004) (stating that "[b]y its terms, Rule 9(b) applies to 'all averments of

fraud,'" and noting that the statute's wording "is cast in terms of the conduct alleged, and is not

limited to allegations styled . . . as fraud or expressed in terms of the constituent elements of a

fraud cause of action").  Here, the basis for joinder is an alleged scheme among Counterclaim

---

[5] Insofar as the Counterclaims allege any facts suggesting that the counterclaims against
Richmond/CBSG should be litigated in a single action, those counterclaims nonetheless are
severed because they are not properly joined under Rules 13 and 20.  Those counterclaims were
not asserted against an "opposing party" (*i.e.*, a party to the underlying action) and have no
apparent relationship to the underlying action between Plaintiff and the McNider Parties.

Defendants to induce the McNider Parties into additional, subsequent loans by means of false promises and agreements that misrepresented the true nature of those transactions. Accordingly, Rule 9(b) applies.

To satisfy Rule 9(b), first, "the complaint must (1) detail the statements . . . that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements . . . were made, and (4) explain why the statements . . . are fraudulent." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (internal quotation marks omitted); *see also Abraham*, 947 F. Supp. 2d at 230–31 (noting that courts in the Second Circuit apply Rule 9(b) to any cause of action sounding in fraud, including fraud, intentional misrepresentation and negligent misrepresentation, and collecting cases). Second, the complaint must "allege facts that give rise to a strong inference of fraudulent intent." *Loreley*, 797 F.3d at 171 (internal quotation marks omitted).

The Counterclaims fail to allege sufficient facts to satisfy Rule 9(b)'s heightened pleading standard. The Counterclaims allege that Counterclaim Defendants "collectively engaged in an unlawful pyramid scheme" to "induce[] McNider to enter into criminally usurious loans that they knew McNider could never pay off without entering into subsequent additional loans." The Counterclaims further allege that the "MCA industry is . . . small"; that "information is spread within the MCA industry . . . to lure these small businesses into additional agreements"; and that "the MCA Defendants seek to protect their loans by actively seeking other MCAs to place new loans." Counterclaim Defendants allegedly represented that each of the relevant transactions was designed "to help McNider's business grow and prosper," and that "McNider's business would be able to afford and comply with the terms and conditions of each transaction." The Counterclaims allege that Counterclaim Defendants made these false promises, aware that

"the merchant is pushed toward an unsustainable level of indebtedness," to lure the McNider

Parties into sham sales of future receivables that, in fact, were usurious loans. These vague and

conclusory allegations, even if accepted as true, are insufficient to support an inference that

Counterclaim Defendants engaged in any concerted scheme or plan such that joinder would be

proper under Rule 20. *See id.* at 176 (stating that claims of fraud may not be based "on

speculation and conclusory allegations").

The Counterclaims also fail to allege with any specificity who made the allegedly

fraudulent statements or when and where they were made; it merely alleges that the "MCA

Defendants" made them "on or around the dates of each transaction." The Counterclaims

likewise fail to specify which allegedly fraudulent statements or improper practices apply to

which Counterclaim Defendant or agreement. Rather, "the pattern as alleged is so vague and

sweeps so broadly that it does not give defendants close to requisite notice of what [the McNider

Parties'] allegations of wrongdoing are" as to any individual Counterclaim Defendant,

transaction or factoring agreement. *Kalie*, 297 F.R.D. at 558.

Although the Counterclaims allege that Counterclaim Defendants engaged in a variety of

improper practices, it fails to allege any specific facts as to the operation of Counterclaim

Defendants' alleged "pyramid scheme." The Counterclaims are devoid of specific facts to

support an inference that Counterclaim Defendants actually shared information or coordinated in

any way to further the alleged scheme. The Counterclaims merely plead that the relevant

industry is "small" and that information is shared among financial institutions.

Nor do the Counterclaims plead sufficient facts to suggest that Counterclaim Defendants

knew that their allegedly fraudulent statements were false, or that the McNider Parties

reasonably relied on Counterclaim Defendants' alleged false promises. The Counterclaims

merely allege, in a conclusory manner, that because each agreement was detrimental to the McNider Parties' business interests, Counterclaim Defendants must have known that their statements were false. The Counterclaims also fail to allege facts that give rise to a strong inference of fraudulent intent. The Second Circuit has held that a "general profit motive common to all corporations . . . does not suffice." *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681 (2d Cir. 2012) (summary order) (relying on *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)). To the extent that the McNider Parties' argue that their reliance on Counterclaim Defendants' alleged false promises was reasonable, that argument is undermined by the allegations in the Counterclaims that the McNider Parties entered into substantially similar or identical agreements, in reliance on the same alleged false promises, roughly twenty times in a more than two-year period. These allegations are too vague and conclusory to pass muster under Rule 9(b). *See, e.g.*, *Abraham*, 947 F. Supp. 2d at 230–31 (joinder based on conspiracy allegations improper where the plaintiffs failed to meet Rule 9(b)'s heightened pleading standard); *Abner Realty, Inc. v. Adm'r of Gen. Servs. Admin.*, No. 97 Civ. 3075, 1998 WL 67663, at *10 (S.D.N.Y. Feb. 18, 1998) (holding that "[t]he lack of any facts demonstrating [the plaintiff's] conspiracy claim persuade against grant of joinder" under Rule 20(a)); *AIA Holdings, S.A. v. Lehman Bros. Inc.*, No. 97 Civ. 4978, 1998 WL 159059, at *7 (S.D.N.Y. Apr. 1, 1998) (holding that Rule 9(b) was not satisfied where, as here, the complaint "describe[d] a generic fraud, as if each plaintiff's case is identical to every other case, and relie[d] on broad, sweeping generalizations").

Because joinder is improper under Rule 20(a), severance of the Counterclaims from the main action is required. *D'Angelis v. Bank of Am., N.A.*, No. 13 Civ. 5472, 2014 WL 202567, at *3 (E.D.N.Y. Jan. 16, 2014) (stating that where there is "no common transaction or occurrence,

severance and dismissal of the misjoined claims is mandatory") (quoting *Kalie*, 297 F.R.D. at 559)).

## B. Discretionary Severance

Even if the Counterclaims were to plead sufficient facts to meet Rule 20's requirements, the Court would (and does) exercise its discretion under Rule 21 to sever the Counterclaims, including *sua sponte*, those against Flat Fee. In determining whether severance is proper, courts in the Second Circuit consider

> [i] whether the claims arise out of the same transaction or occurrence; [ii] whether the claims present some common questions of law or fact; [iii] whether settlement of the claims or judicial economy would be facilitated; [iv] whether prejudice would be avoided if severance were granted; and [v] whether different witnesses and documentary proof are required for the separate claims.

*Crede CG III, Ltd. v. 22nd Century Grp.*, No. 16 Civ. 3103, 2017 WL 280818, at *11 (S.D.N.Y. Jan. 20, 2017) (internal quotation marks omitted and alterations in original). Parties may be severed even if only one of these factors is present, although courts typically grant severance after finding that more than one factor is satisfied. *Id.*; *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 503 (S.D.N.Y. 2013).

Here, the Counterclaims arose from a different transaction or occurrence with regard to each Counterclaim Defendant, requiring different witnesses and documentary proof. The Counterclaims allege multiple causes of action based on no fewer than seven different agreements between the McNider Parties and lenders in multiple states. Notwithstanding that some of the agreements include similar provisions, the adjudication of the claims against each Counterclaim Defendant will require scrutiny of the terms of each agreement. *See Bos. Post Rd. Med. Imaging, P.C. v. Allstate Ins.*, No. 03 Civ. 3923, 2004 WL 1586429, at *2 (S.D.N.Y. July 15, 2004) (severing claims based on identical insurance policies in the interest of judicial

efficiency).  Insofar as the agreements include valid choice of law provisions, or give rise to transactions centered in different states, the Court would have to apply the common law of different states.  Some Counterclaims arise under Alabama law, and others, against only some Counterclaim Defendants arise, under New York law.  To the extent that the McNider Parties seek to prove their claims as they have pleaded them -- painting with a broad brush and relying on the similarity of transactions rather than individualized proof -- severance will avoid prejudice and possible jury confusion.  *Costello v. Home Depot U.S.A., Inc*., 888 F. Supp. 2d 258, 265 (D. Conn. 2012) ("Severance is appropriate where a joint trial could lead to confusion of the jury." (internal quotation marks omitted)).  The Counterclaims are severed and dismissed from the underlying action because of the factual and legal differences among them.[6]

## IV.   CONCLUSION

The claims against Counterclaim Defendants and Flat Fee are SEVERED from the main action, which remains closed, and are DISMISSED without prejudice to commencing separate

---

[6] Although Counterclaim Defendants do not assert lack of personal jurisdiction or venue as a basis for dismissal of the counterclaims, the Court notes that joinder is an improper vehicle for commencing what would otherwise be multiple, independent actions against Counterclaim Defendants, at least three of which -- CBSG, Yellowstone and Flat Fee -- have no apparent nexus to New York and therefore for which personal jurisdiction and venue likely are lacking.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (rejecting the argument that federal courts have general jurisdiction over a corporation in every state in which that corporation "engages in a substantial, continuous, and systematic course of business" and holding that, for the exercise of general jurisdiction to be proper, a corporation's affiliations with the state must be "so continuous and systematic as to render it essentially at home in the forum state" (internal quotation marks and alterations omitted)); 28 U.S.C. § 1391.

actions as to each counterclaim defendant and/or agreement in an appropriate forum.  The

McNider Parties' motion to amend the caption is DENIED as moot.  The Clerk of Court is

directed to close the motions at Docket Nos. 95, 106, 109, 114, 123 and 126.

Dated: November 21, 2017
        New York, New York


LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE